```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
ERIK HERZFELD,                           :
                    Plaintiff,           :
                                         :    07 Civ. 9439 (DLC)
          -v-                            :
                                         :    OPINION & ORDER
JPMORGAN CHASE BANK, N.A.,               :
                    Defendant.           :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiff:

James J. Coster
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169

For Defendant:

John T. Sartore
Paul, Frank & Collins P.C.
One Church Street
Burlington, Vermont 05402

DENISE COTE, District Judge:

This diversity action concerns an ill-fated offer of employment made by defendant JPMorgan Chase Bank, N.A. ("JPMC") to plaintiff Erik Herzfeld ("Herzfeld") in February 2005. JPMC has moved for summary judgment on Herzfeld's sole claim, fraudulent inducement. JPMC's motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed or taken in the light most favorable to the plaintiff. From 2001 to 2005, Herzfeld worked for JPMC in the area of foreign exchange ("FX") options trading, first in Tokyo and later in Singapore. In early February 2005, he received and decided to accept a time-sensitive offer from Bank of America ("BofA") to create an FX correlations trading business based in New York. The offer included a first year compensation guarantee consisting of a base salary and bonus of one million dollars, as well as a guaranteed base salary for a second year. When Herzfeld informed JPMC of the BofA offer and of his intention to resign, his superiors in Asia sent him to New York to meet with Patrik Edsparr ("Edsparr"), the head of JPMC's global proprietary positioning business ("PPB").[1] At the time, JPMC had been losing several high-level executives to BofA.

In New York, Herzfeld met with Edsparr and with five or six other members of the PPB team individually over a period of several hours on February 17. During his meeting with Herzfeld, Edsparr discussed the possibility of building an FX correlations trading business within the PPB group. Herzfeld told Edsparr that he was confident he could build such a business and that,

---

[1] The PPB trades on behalf of JPMC itself, that is, with the bank's money.

in time, it could generate twenty to thirty million dollars a year.  That same day, Herzfeld was also interviewed over the telephone by Derek Kaufman ("Kaufman"), a managing director who, as Herzfeld understood, worked closely with Edsparr but was away from New York at the time.

The next afternoon, Edsparr met with Herzfeld once more and offered him the opportunity to create an FX correlations business within JPMC's PPB group in New York.  The employment offer came with no guarantees.  According to Herzfeld, however, Edsparr did tell him he would have a "brighter future" in JPMC's PPB group than at BofA, and that "over time" he would be better compensated.  Herzfeld decided to accept JPMC's offer and to decline the offer from BofA.  He began his new position in the PPB group on May 2, 2005.

Herzfeld's endeavor to build an FX correlations business in the PPB group did not go well.  In his new position, Herzfeld reported directly to Kaufman, who, in turn, reported directly to Edsparr.  Herzfeld was provided with capital for trading, and with at least some resources for hiring junior traders.  Herzfeld, however, ended the year 2005 with a loss of about $1.5 million,[2] and by October 2006, his losses totaled about $12 million.  With Edsparr's authorization, Kaufman ultimately told

---

[2] Edsparr nonetheless approved a 2005 bonus for Herzfeld of $285,000.

Herzfeld in late October that he should begin looking for another job.  By December 2006, Herzfeld had stopped coming into work, but JPMC kept him on the payroll through January 2007, thus allowing some of Herzfeld's stock awards to vest.

Herzfeld then commenced this lawsuit.  In it, he does not challenge the termination of his employment at JPMC.  Rather, Herzfeld alleges only that he was fraudulently induced into accepting JPMC's employment offer in 2005, because he "walked into a different job" than the one that had been presented to him on February 18, 2005.  Following the close of discovery, JPMC has moved for summary judgment on Herzfeld's sole claim of fraudulent inducement.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

The parties agree that New York law governs their dispute. "In New York a plaintiff alleging fraud must show by clear and convincing evidence that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007). Where a party "seeks to show fraud by omission, it must prove additionally that the [defendant] had a duty to disclose the concealed fact." Id.

Herzfeld asserts that JPMC made three material misrepresentations, each intended to induce Herzfeld to decline his BofA offer and accept JPMC's offer, and upon which Herzfeld relied to his detriment. Herzfeld alleges Edsparr told him: (1) that Edsparr would be Herzfeld's boss; (2) that Herzfeld would have the authority to hire three full-time, experienced traders for his new business; and (3) that Edsparr had been planning to create an FX correlations business in the PPB group.

I.  Edsparr as Herzfeld's Boss

Herzfeld testified at his deposition that Edsparr told him he would be Herzfeld's "boss" in the new PPB position. Herzfeld now points to that statement in support of his fraudulent inducement claim, asserting in his affidavit that, "Based upon my experience at JPMC, as well as my understanding of the term,

5

this meant that Edsparr would oversee my business and that I would report directly to him."[3] Instead, Herzfeld reported directly to Kaufman, which, Herzfeld alleges, had been Edsparr's plan all along.

Herzfeld has failed to raise an issue of fact concerning the truthfulness of Edsparr's statement that he would be Herzfeld's boss. It is undisputed that Edsparr led the PPB unit within which Herzfeld worked; that Edsparr directly supervised and had veto power over Kaufman; that Edsparr monitored Herzfeld's progress through discussions with Kaufman; and that Edsparr personally approved Herzfeld's compensation and the decision to ask for Herzfeld's resignation.[4] In these circumstances, no reasonable jury could conclude by clear and convincing evidence that Edsparr's purported statement that he

---

[3] Herzfeld further asserts in his affidavit that he "wanted to work directly under Edsparr and report to him," explaining that he had "done some due diligence on Edsparr, and was impressed with his successes, experience, and reputation." These statements have been taken as true for the purpose of deciding this motion.

[4] In his Response to Defendant's Statement of Undisputed Material Facts, Herzfeld purports, without any citation to the record, to dispute Edsparr's final authority over Herzfeld's compensation and the termination of his employment. Local Rule 56.1(d) specifies that "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible." Herzfeld's unsupported denials thus fail to raise an issue of fact with respect to Edsparr's control over Herzfeld's compensation and the termination of his employment.

6

would be Herzfeld's "boss" amounted to a factual misrepresentation.

Herzfeld's assertion in an affidavit that he understood Edsparr's use of the term "boss" to mean that Edsparr would be his immediate supervisor does not create a question of fact as to whether a person in Edsparr's role would be accurately described as Herzfeld's boss.  Nor has Herzfeld pointed to any discussion with Edsparr which put Edsparr on notice either that it was important to Herzfeld that Edsparr be his immediate supervisor or that Herzfeld understood that he would be reporting directly to Edsparr.  Although a party has a duty to disclose information if it has made "a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party," or if it "possesses superior knowledge, not readily available to the other," this duty arises only when a party becomes aware that another is "operating under a mistaken perception of a material fact."  Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995) (citation omitted); see also TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 91 (2d Cir. 2005).  Herzfeld offers no evidence from which a reasonable jury could conclude that Edsparr was aware that Herzfeld understood he would report

7

directly to Edsparr.[5]  In sum, Herzfeld has failed to raise a genuine issue of fact to suggest that Edsparr misrepresented or wrongfully concealed material information by stating that he would be Herzfeld's boss.

### II.  Authority To Hire Traders

Herzfeld next points to a statement in his affidavit in which he declares: "Edsparr told me that I would be a manager and have authority to hire a team of three experienced traders in three time zones to allow the business to be effective."  In his opposition brief on JPMC's motion for summary judgment, Herzfeld contends that this authority to hire traders meant "full authority," without anyone else's input or review.  He argues that this representation was false because Kaufman never allowed him to hire three experienced traders in three time-zones, and Edsparr himself testified that he never intended to provide Herzfeld with unbridled authority over hiring decisions.[6]

---

[5] Herzfeld also contends that the reasonableness of his reliance on Edsparr's statement is a question of fact for the jury.  This argument is inapposite, however, because the question of whether a material misrepresentation or omission was made in the first instance is separate from that of whether any reliance on it was reasonable.

[6] Specifically, Edsparr testified at his deposition that Herzfeld "would have authority to hire those people in normal collaborative fashion with . . . the other people. . . . [N]o one just goes out and hires . . . his or her own people without consultation and a little bit of a broader peer-review process."

8

It is undisputed that once Herzfeld began his new position in the PPB unit, he "was in contact with headhunters, executive search firms," and "reached out to people that [he] knew in the industry over the years."  Using JPMC resources, Herzfeld also traveled to Japan and to London to interview candidates, and all told interviewed between ten and twenty candidates.  In 2005, an individual named Ryan Letchworth was hired as a junior trader for Herzfeld's group.  Although Herzfeld asserts that he did not want to hire Letchworth because he lacked trading experience, he testified that "[e]ventually we hired him." (Emphasis added.)  Another individual, Sebastian Gutierrez, was also hired to work as a trader under Herzfeld.  Herzfeld's own testimony makes clear that he was provided with substantial resources and authority to conduct recruiting and hiring activities for his new group.

Herzfeld has failed to offer admissible evidence that Edsparr made the specific representations to Herzfeld about his hiring authority during the February 2005 meeting on which Herzfeld's fraud claim rests.  Herzfeld did not testify at his deposition to these alleged statements and it is well-settled that "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his]

9

own prior deposition testimony." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

At his deposition, Herzfeld was asked repeatedly to list the representations that were made to him regarding the JPMC offer. Nevertheless, although Herzfeld cites in his opposition brief to several pages of his deposition testimony to support this second alleged misrepresentation, only a limited portion of the referenced testimony is even remotely relevant to the hiring allegation. Specifically, Herzfeld testified that his understanding when he left Edsparr's office of the position he had been offered by JPMC included, among other things, that he would be a "manager that can hire people to grow this business." He did not identify any particular statements that created this understanding. Herzfeld, moreover, did not testify that he was promised "authority" over the hiring of his team, much less the "full authority" he suddenly references in his brief, or that he could hire a team composed of three experienced traders working in three time zones.[7] JPMC is thus entitled to judgment as a matter of law on the second set of misrepresentations that Herzfeld has alleged.

---

[7] Herzfeld's second claim is also belied by other evidence in the record. In an e-mail to Kaufman dated February 3, 2006, Herzfeld wrote, "i feel we have the trading tools we need now and just have to be patient for the opportunities."

10

III. Prior Intention To Build FX Correlations Business

The third and final alleged misrepresentation to which Herzfeld points in this lawsuit is again asserted principally in Herzfeld's affidavit, where Herzfeld states: "Edsparr told me that he had planned for some time to create a foreign currency trading business within the PPB."[8]  Herzfeld contends that this representation was knowingly false at the time it was made because Edsparr has now testified that he "did not have a search out for this particular business for a person . . . running that business" and had "no specific plans" for such a business before he first met with Herzfeld in New York.[9]  Herzfeld also relies on an e-mail that Kaufman sent to Edsparr after interviewing Herzfeld over the telephone, in which Kaufman wrote that he was "not quite sure exactly how [Herzfeld] fits into [the PPB] business plan."  This third alleged misrepresentation fails as a

---

[8] Herzfeld explains in the affidavit that this representation was significant because "BoA clearly wanted [Herzfeld] to build a foreign currency options correlation business and was willing to give [him] autonomy to build it according to [his] vision and to invest the necessary time, patience, and resources."  He further asserts that he "would not have accepted a position for an employer who did not have a plan to build a foreign currency options correlation business, and thus lacked the motivation to invest the necessary time, patience, resources."

[9] Kaufman and Edsparr testified that the creation of the PPB unit was largely opportunistic, in that new businesses were often added without preexisting plans for their creation, but simply because the right people or strategies had appeared for them. Kaufman testified that "foreign exchange options is something we had always discussed on and off."

matter of law to support Herzfeld's claim of fraudulent inducement.

Here again, Herzfeld never asserted in his deposition the allegedly fraudulent statement that he now describes in his affidavit.[10]  In the only relevant testimony to which he cites in support of this theory, Herzfeld testified as follows:

> Well, [Edpsarr] <u>tried to paint the picture</u> that he's been trying to look for someone to build a business in correlation trading.  He mentioned he had a credit business, a fixed-income business, an equity business and <u>he did not have a foreign exchange business</u>.  He thought that my technical background, my schooling, my preparation made me a prime candidate in someone they would hope to be part of their group.

(Emphasis added.)  The fact that Edsparr noted to Herzfeld that he did not yet have an FX business in the PPB group is a truthful statement and does not imply that Edsparr had been "planning for some time" to create such a business.  The only factual representations in this passage are in the second and third sentences and Herzfeld does not assert that any of them are false.  As for the first sentence, which conveys Herzfeld's belief about an impression that Edsparr was trying "to paint," this does not constitute an actionable factual representation by Edsparr.  JPMC is thus entitled to summary judgment on

---

[10] As JPMC accurately points out in its reply brief, this purported misrepresentation was also never alleged in Herzfeld's Complaint.

12

Herzfeld's third and final theory for his fraudulent inducement claim.

CONCLUSION

The defendant's October 17, 2008 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

SO ORDERED:

Dated:   New York, New York
         December 15, 2008

                                    _____
                                         DENISE COTE
                                    United States District Judge